IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

GERARDO JOSE PORTILLO LOZANO,
    *Petitioner*,

v.

JOSEPH SIMON, *et al.*,
    *Respondents*.

1:25-cv-01790-MSN-WBP

<u>ORDER</u>

Petitioner Gerardo José Portillo Lozano ("Petitioner") has filed a Petition for Writ of Habeas Corpus ("Petition"), pursuant to 28 U.S.C. § 2241, in which he asserts that he has been illegally detained by the U.S. Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE"). ECF 1. Specifically, Petitioner alleges that his characterization by DHS as an "applicant for admission" pursuant to 8 U.S.C. § 1225(a), thus subjecting him to mandatory detention under 8 U.S.C. § 1225(b)(2), violates the Immigration and Nationality Act ("INA") (Count I) and his right to substantive and procedural due process (Counts II and III).

Petitioner is currently detained at the Caroline Detention Facility, an immigration detention facility within this Court's jurisdiction. He has sued Paul Perry, the warden of that facility. He has also sued Joseph Simon, Acting Field Office Director of Enforcement and Removal Operations, New Orleans Field Office; Kristi Noem, the DHS Secretary; and Pamela Bondi, the Attorney General (collectively, the "Federal Respondents"). The Federal Respondents have opposed the Petition. ECF 5. For the reasons that follow, the Court will grant the Petition as to Counts II and III.[1]

---

[1] Because the Court grants relief on Petitioner's due process claims (Counts II and III), it need not address Petitioner's claim under the INA (Count I).

## I. BACKGROUND

Petitioner is a native and citizen of El Salvador who entered the United States without inspection in 2013. ECF 1 ¶ 1. He now resides in Virginia and has a U.S. citizen child. *Id.* at ¶ 43. On September 12, 2025, ICE officers stopped Petitioner while he was on his way to work.[2] ECF 1 ¶ 38. ICE agents arrested Petitioner took him into custody at an ICE facility in Chantilly, Virginia before transferring him to the Caroline Detention Facility. *Id.* at ¶ 39. Following his transfer, ICE officers served him with a Notice to Appear ("NTA") initiating removal proceedings before the immigration court. *Id.* at ¶ 40. Petitioner has remained in ICE custody since that date. *Id.* at ¶ 41. While he has not filed a motion for custody redetermination, Petitioner contends that he is effectively foreclosed from doing so as a result of the Board of Immigration Appeals ("BIA")'s decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).[3]

## II. ANALYSIS

The central question posed in the Petition is whether Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) or instead subject to discretionary detention and entitled to

---

[2] In his Petition, Mr. Portillo Lozano alleges that, at the time of his arrest, he and his employer were driving in a work van on the George Washington Parkway. ECF 1 ¶ 38. United State Park Police initiated a stop because "vans were not slowing down to pass in that area." *Id.* But the officer later "confirmed that no traffic violation was identified." *Id.* at ¶ 39. Petitioner alleges that the officer asked Petitioner—who was a passenger—for identification. *Id.* at ¶ 38. When Petitioner responded that he "did not have it with him," the officer stated "[s]o you're undocumented—get down." *Id.* The officer then "reached into the vehicle, took a wallet from the cupholder, and found Petitioner's Virginia driver's license and Salvadoran ID card." *Id.* Despite having valid Virginia identification, he was ordered out of the vehicle and detained. *Id.* at ¶ 39. His employer, who is a United States citizen was not arrested or detained. *Id.* Shortly after, several ICE agents arrived and took him into custody without explaining the reason for his arrest or advising him of his legal rights. *Id.* They then questioned him about the names of his family. *Id.*

While not at issue in this petition, the Court is deeply troubled by the circumstances of Petitioner's arrest and detention, which seems to be predicated on a stop and arrest without reasonable suspicion. *See Noem v. Vasquez Perdomo*, No. 25A169, 2025 WL 2585637, at *3 (Kavanaugh, J., concurring) (reiterating that, "[t]o stop an individual for brief questioning about immigration status, the Government must have reasonable suspicion that the individual is illegally present in the United States," and that reasonable suspicion cannot be based on "ethnicity alone").

[3] Federal Respondents have waived any argument that Petitioner did not exhaust his administrative remedies with respect to his habeas claim. However, to ensure that Petitioner's eventual bond hearing comports with ordinary ICE procedures, this Court will direct Petitioner to file a motion for custody redetermination pursuant to 8 C.F.R. § 236.1(d)(1) before Federal Respondents hold the hearing required by this Order.

a bond hearing under 8 U.S.C. § 1226(a). Petitioner contends that his detention should be governed by § 1226(a) and that his current detention without bond pursuant to § 1225(b)(2) violates his right to due process. Federal Respondents "recognize that this Court and other jurists of this Court have recently rejected Federal Respondents' arguments" that individuals in Petitioner's position are subject to mandatory detention under 8 U.S.C. § 1225(b)(2). ECF 5 at 2; *see also, e.g.*, *Quispe-Ardiles v. Noem*, No. 1:25-CV-01382-MSN-WEF, 2025 WL 2783800, at *1 (E.D. Va. Sept. 30, 2025); *Luna Quispe v. Crawford*, No. 1:25-CV-1471-AJT-LRV, 2025 WL 2783799 (E.D. Va. Sept. 29, 2025). Nevertheless, they raise these same arguments "to preserve them for appeal." ECF 5 at 3.

At bottom, Federal Respondents' argument is that anyone in the United States who has not been admitted is subject to mandatory detention under § 1225(b), and § 1226(a)'s discretionary detention provisions apply only to those who have been given legal status and subsequently placed into removal proceedings. ECF 5 at 6-16. They therefore argue that because Petitioner is present in the United States but has not been legally "admitted," he should be considered an applicant for admission under § 1225(a), and subject to mandatory detention under § 1225(b)(2). *Id.* at 6–9.

Federal Respondents' argument reflects DHS's novel interpretation of decades-old immigration detention statutes which, as several district courts throughout the country have found,[4] is contrary to DHS's implementing regulations and published guidance, the decisions of its immigration judges (until very recently), longstanding practice in U.S. immigration law, the Supreme Court's interpretation of the statutory scheme, and traditional tools of statutory construction. *See, e.g.*, *Hasan v. Crawford*, No. 1:25-cv-1408, 2025 WL 2682255, at *8-9 (E.D.

---

[4] *See Luna Quispe v. Crawford*, No. 1:25-cv-1471-AJT-LRV, 2025 WL 2783799, at *6 & n.9 (E.D. Va. Sept. 29, 2025) (collecting cases).

VA. Sept. 19, 2025); *Romero v. Hyde*, No. 25-cv-11631, 2025 WL 2403827, at *9 (D. Mass. Aug. 19, 2025). This new approach will also subject "millions more undocumented immigrants to mandatory detention, while simultaneously narrowing § 1226(a) such that it would have [an] extremely limited (if any) application." *Lopez Benitez v. Francis*, No. 25-cv-5937, 2025 WL 2371588, at *8 (S.D.N.Y. Aug. 13, 2025) (footnote omitted). This Court has previously addressed several of these points in *Quispe-Ardiles*, 2025 WL 2783800, and adopts and incorporates that reasoning into this Order. *See also, e.g.*, *Flores Pineda v. Simon*, No. 1:25-cv-01616-AJT-WEF, 2025 WL 2980729, at *2 nn.2 & 3 (E.D. Va. Oct. 21, 2025) (providing additional explanation for why § 1225(b)(2) does not apply).

Because Petitioner has been present in the United States for roughly twelve years, and because § 1226(a) sets forth "the default rule" for detaining and removing aliens "already present in the United States," *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018), Petitioner's detention is governed by § 1226(a). And under § 1226(a) and its implementing regulations, he is entitled to a bond hearing before IJ, in which the IJ must determine whether he poses a danger to the community or a risk of flight. 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(d)(1). Unless the IJ makes such a determination, Petitioner's continued detention is unlawful and, for many of the reasons stated in *Quispe-Ardiles*, 2025 WL 2783800, at *8–10, violates his right to due process.

### III.   CONCLUSION

For all the reasons stated above, the Petition (ECF 1) is GRANTED, and it is hereby

ORDERED that to the extent that Petitioner seeks release from detention, Petitioner files a motion requesting a bond hearing or custody redetermination as soon as practicable; and that Federal Respondents provide Petitioner with a standard bond hearing before an IJ pursuant to 8 U.S.C. § 1226(a) within 7 days of the date of that motion; and it is further

ORDERED that Federal Respondents are ENJOINED from denying bond to Petitioner on the basis that he is detained pursuant to 8 U.S.C. § 1225(b)(2); and it is further

ORDERED that Federal Respondents file a status report with this Court within 3 days of the bond hearing, stating whether Petitioner has been granted bond, and, if his request for bond is denied, the reasons for that denial.

The Clerk is directed to enter judgment in Petitioner's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, and close this civil action.

/s/
Michael S. Nachmanoff
United States District Judge

November 7, 2025
Alexandria, Virginia